*Court of Common Pleas, Dauphin County, June 2d, 1866.*

BALL'S ADMINISTRATOR, FOR USE OF FOSTER, *v.* NICHOLSON'S ADMINISTRATOR.

When an executor or administrator resides within the State, a judgment against his decedent should not be revived on two *nihils*, without giving him notice. A judgment upon two nihils, entered nine days after the return of the second, is taken prematurely.

A judgment against a decedent in his lifetime, and revived against an administrator fraudulently appointed by the contrivance of persons having no interest in the estate or the claims against it, will be opened, although seven years had elapsed after its revival.

BY THE COURT.—On the 25th of January, 1865, on motion a judgment was entered in the Court of Common Pleas of this county, that William S. Halsey, administrator *de bonis non* of John Nicholson, be made party to the action, and the same was revived against the estate for the sum of $59,303.80, for default of appearance. This judgment was taken on two *nihils.* The first *sci. fa.* was issued on the 18th of November, 1864, returnable the 2d of December (the second return day of the November Term, the first being — day of November). An *alias sci. fa.* (the above stated writ) issued on the 3d day of January, 1865, returnable on the 16th of that month, and on the 25th of January judgment was entered for default of appearance, as above stated. During all of this time the administrator (Halsey) resided in the city of Philadelphia, and there was no service or attempt to serve him with process. The act of the 6th of April, 1859, appears to have been overlooked or disregarded in the proceeding. That act, which is a supplement to the one relating to executors and administrators, provides, that where such representative of a decedent resides without the jurisdiction of the court, the *scire facias* required by the 27th and 32d sections of the act of the 24th of February, 1834, may be served by the sheriff of the county in which he is resident, if in the opinion of the court such service may be reasonably practicable; but if otherwise, or the representative of the decedent resides

out of the State, the service may, under the direction of the court, be made by publication in one or more such newspapers as will be most likely to give notice to the executor or administrator, which is to have the same force and effect as the service required by the former act.    Prior to the passage of the act of 1834, it was the well-settled practice of Pennsylvania to revive judgments *inter vivos* by *scire facias* on the return of two *nihils.*    It was equally common by the same process, to bring in and take judgments against the representatives of a decedent.    We would have thought, independent of judicial decision, that the act of 1834 intended to change the practice, and require *actual service* on the representative before making him a party.    The 27th section of the act of 1834 provides that within twenty days after the *service* of the *sci. fa. on the executor or administrator,* the court shall have power to make them parties to the action by the judgment of the court; but even then the representative made a party is entitled to a continuance for one term.    The first case which came before the court after the passage of the act was Chambers *v.* Carson, reported in 2 Wh. 9, and same book, 365, where it was held that the old practice continued notwithstanding the act.    That was a *sci. fa.* on a mortgage, the proceeding being purely local in its character; and it was decided that the sheriff could not go out of his bailiwick to serve the writ.    Judgments could, however, have been pursued by actions of debt or by filing copies of the record where the representative could be found, rather than have defaulted a dead man, or taken judgment against the *executor* or *administrator* without service or notice of the existence of any claim against the decedent.    It would have been quite as proper to have process served upon or notice given to the representative, as to serve a citation out of the Orphans' Court in a distant county, which is the constant practice and always held legal.    The inconvenience arising from taking judgments against the representatives of decedents without service or other notice was doubtless felt and led to the passage of the act of 1859, which furnished a full remedy and must be strictly followed.    It has not been done in the present case, and therefore the judgment must be set aside.    The administrator made application to have this done so soon as he was aware of it having been rendered.    We have no doubt of the power of this court to vacate its judgment entered without authority and without notice; it must be reversed if removed to the Supreme Court, and we can correct our own errors where judgment has been inadvertently and illegally given.    There is another irregularity, of minor importance, to which we may advert.    Supposing the two returns of *nihil* to be *equal* to a service, it certainly should not give the plaintiff greater advantage than could the actual service of the writ.    The return is made on the 16th of January, 1865, the return day of the writ; the judgment is taken on the

[Ball's Administrator, for Use of Foster, *v.* Nicholson's Administrator.]

25th of January, nine days thereafter; yet the act of 1834 gives the executor or administrator *twenty* days after service to appear and become a party, or show cause at the next term why he should not become a party.

We think the judgment was taken prematurely. We must now turn our attention to the judgment, No. 193 of April Term, 1858 (Ball's Administrator *v.* J. Vance Creswell, Administrator of John Nicholson). This writ was issued on the 22d of April, 1858, and served on the administrator the same day, to bring him in and make him a party. The return day of the term was the 26th of April, but this writ was made returnable on the second return day, the 7th of May. On the 11th of May judgment was taken for default of appearance, for $42,297.30. This was perhaps premature and irregular, but as more than seven years had intervened between that period and the application to set aside the judgment, it is cured by lapse of time, and can neither be disturbed by this court or reversed on a writ of error. Should this judgment be opened under the facts proved, so as to let the present administrator into a defence? The original judgment, No. 101 of December Term, 1796, was entered against John Nicholson, on the 3d of March, 1797, by virtue of a warrant of attorney. Mr. Nicholson died in December, 1800. Letters of administration were first taken out on his estate in the year 1826; the administrator was discharged in 1838, and a few days after another was appointed. In November, 1857, the second administrator, who was a son of John Nicholson, was discharged, and J. Vance Creswell was appointed. This appears to have been done on the petition of one Mary Susanna Davy, who, it is averred, had no interest whatever in the estate, and was no relative to the deceased. It is shown that this woman presented the petition through the management of one J. C. Heylman, who at the time had neither interest in or connection with the estate, nor had he any claim on this judgment. At a previous time, in 1853, Heylman had purchased from the heirs of John Nicholson, all of their interest in his estate, including lands, mortgages, contracts, etc., and had sold the same to Mr. Taggart during the same year. The latter sold the property and interest to W. J. Halsey, the defendant, on the thirty-first day of August, 1859, who, the following year, took measures to have Mr. Creswell removed, as having been improvidently appointed administrator *de bonis non* of John Nicholson; and the Orphans' Court of Philadelphia County vacated the letters, and granted new ones to Halsey. Mr. Creswell received his appointment as administrator in November, 1857, and in April, 1858, a *scire facias* issued to revive this judgment, then some sixty-one years old. The writ was served on Mr. Creswell, who gave it no attention, and judgment was entered against him a few days after

for default of appearance, and a revival had for $42,297.30 and costs.   Mr. Creswell testifies that he administered on the solicitation of Heylman, and for his accommodation, who, he supposed, held the claim, and was pursuing it for the benefit of Taggart and his assignee, to whom he had sold the Nicholson property. At the time of the revival, Heylman had no claim on this judgment, and no right to meddle with it.   He purchased it some three years afterwards, according to the evidence of Mr. Caldwell, for a small sum, probably three or four hundred dollars.   Caldwell, administrator of Ball, knew nothing of its existence or situation; for although his name was used, he did not know of the judgment till informed by Heylman, nor of the proceeding upon it, until shortly before giving his testimony.   He never employed counsel, or moved in the business.   The whole matter appears to have been concocted by Heylman for his own benefit. The name of Mary S. Davy must have been used as a blind in getting up an administrator, as she appears to have had no interest, but wished to accommodate Heylman, and acted under his direction.   Creswell knew nothing of the object, but suffered his name to be used, and did not look after the interest of the estate he was appointed to represent, but permitted Heylman to manage the business in his own way.   The least care on his part would have protected the estate and defeated a recovery.   We cannot look upon the whole proceeding in any other light than an improper meddling with the estates of two dead men by a person who had no interest in or right to interfere with either, and got up by Heylman for the fraudulent purpose of embarrassing a right of property which he himself had sold a few years before.   If any judgment should be opened or vacated as obtained by fraud, this one is of that character.   It is said, however, that there is a want of power in the court to disturb a judgment after so great a lapse of time; and if we possess the power, it should not be exercised against the present holders of the claim, who are *bonâ fide* purchasers, without notice, they relying upon the truth and good faith of the record.   That the courts of Pennsylvania possess a general power to open judgments entered by default or on a warrant of attorney is not to be questioned, provided the application be made in a reasonable time after its existence is discovered.   The cases in which the authority was questioned is where there has been a trial or judgment rendered by the court on a hearing.   Such was Catlin *v.* Robinson (2 Watts, 379).   There had not only been a trial and judgment, but a sale of the property and recovery in ejectment.   In Stephens *v.* Cowan (6 Watts, 513), the power to change the judgment entered by mistake on the part of the court is recognized.   In Matthews's Executors *v.* Patterson (9 C. 487), there had been a decision and affirmance in the Supreme Court, held too late to correct the error.

In Banning *v.* Taylor (12 H. 289), it was held that a judgment entered on a warrant of attorney improperly might be stricken off by the court, even after some time had elapsed. The same is decided in Hutchinson *v.* Ledlie (12 C. 112). In the case before us we have a plan concocted to revive a long-extinguished judgment against the estate of a decedent by a person who had no interest either in the claim or the estate—an administrator raised up by the contriver to effect the object, and in contemplation of law a combination between the party and the administrator to have a judgment recovered. We say *a combination in contemplation of law,* for we do not believe that Mr. Creswell was guilty of anything but gross negligence arising from misplaced confidence in Heylman, who he did not suppose was pursuing any improper object, but was endeavoring to collect his debt and secure a title sold. The judgment thus obtained is now endeavored to be used against the very property which Heylman had himself disposed of. We think that moral honesty and the ends of justice require that this judgment should be opened. It is said, however, that the rights of innocent third persons will be injuriously affected. It is a settled principle of law that the assignee of a judgment is in no better situation than the assignor. If these purchasers desired to protect themselves they should have inquired of the present defendant, the administrator *de bonis non*, whether there was any defence against the judgment before they paid their money. Besides, we think that there was sufficient in the record in this case to put a man of ordinary prudence on inquiry. There was a judgment over sixty years old, on which nothing had been done during all of that time ; an administrator *de bonis non* then raised up, and a judgment of revival entered against him by default; he promptly removed for some cause, and some years after, another administrator *de bonis non* brought in, without any legal service of process, and the judgment revived by default; and it is this claim, thus illegally entered, that the present parties in interest aver they have purchased. They must have bought for speculation, and should it fail, must bear the loss. The present defendant has combated the claim with reasonable diligence. So soon as he knew of Mr. Creswell's appointment as administrator *de bonis non* of Nicholson, he applied to the Orphans' Court of the proper county and had him removed. He knew nothing, as he testifies, of the judgment rendered against himself, until a copy was sent to Philadelphia, and then, for the first time, discovered this previous entry against Creswell. We are of the opinion that this large judgment should not stand in force against the estate without the opportunity of a trial, and we shall therefore order it to be opened and the defendants let into a defence, the lien, if any, to remain against the property of the decedent, and the defendant, as administrator *de bonis non*, to substitute

himself as defendant in that writ of *scire facias*, so as to try the cause as if the writ had originally been issued against him as administrator.